*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. V. WILSON and A. A. WILSON, Minors.

UNPUBLISHED
April 11, 2019

Nos. 345686; 345688
Wayne Circuit Court
Family Division
LC No.  15-521401-NA

Before:  LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother appeals by right the trial court's orders terminating her parental rights to her minor children, AA and AV, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (g) (failure to provide proper care and custody).  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner filed a petition for removal of AA in 2015, alleging improper supervision, physical neglect, and threatened harm.  The petition alleged that respondent-mother was the victim of multiple instances of domestic violence at the hands of Denoloeus Buchanan, her boyfriend and the father of AV, which included several severe assaults and an incident in which Buchanan had pushed respondent–mother down the stairs while she was holding AA.  The petition also alleged that Buchanan had set fire to respondent-mother's home while it was unoccupied.  Notwithstanding these incidents, respondent-mother had allowed Buchanan back in the home and had remained in a relationship with him.  Respondent-mother was pregnant with AV at the time the petition was filed.

---

[1] See *In re Wilson Minor*, unpublished order of the Court of Appeals, issued October 17, 2018 (Docket Nos. 345686, 345688).  The parental rights of the fathers of the children were terminated in the same order, but neither has filed an appeal.

Respondent-mother appeared for the initial preliminary hearing on December 3, 2015, but left abruptly during the proceedings. The hearing continued the following day, but respondent-mother did not appear; testimony from a friend of respondent-mother indicated that respondent-mother was attempting to avoid petitioner and was "on the run." The hearing was postponed to allow for efforts to locate respondent-mother and AA. Respondent-mother did not appear at the continued preliminary hearing on December 9, but Lisa Johnson, a Child Protective Services (CPS) specialist, testified that she had made contact with respondent-mother and that respondent-mother had surrendered AA, who was placed in a licensed foster home. Johnson testified that respondent-mother was no longer living with Buchanan. The trial court authorized the petition, and later took jurisdiction over AA following an adjudication bench trial in February 2016. Respondent-mother was ordered to comply with a treatment plan, including attending parenting classes, domestic violence therapy and individual therapy with a domestic violence component, obtaining suitable housing and legal income, maintaining contact with petitioner, psychological and psychiatric evaluation if needed, and infant mental health services. Respondent-mother was granted supervised parenting time.

AV was born in March 2016. Petitioner filed a petition for removal the following day, citing AA's removal as well as the fact that respondent-mother had tested positive for marijuana while pregnant with AV. The trial court authorized the petition and placed AV in foster care, with supervised parenting time. AV was later adjudicated and respondent-mother was ordered to comply with the treatment plan already in place for AA.

Over the next two years, respondent-mother made some progress on her treatment plan, but never achieved full compliance. Petitioner filed a supplemental petition seeking to terminate respondent-mother's parental rights to both children. The petition alleged that respondent-mother had completed parenting classes, but had failed to benefit from them and had refused to attend additional classes that were offered. Respondent-mother had been dismissed from individual therapy twice for non-attendance. After several referrals, respondent-mother had completed domestic violence counseling, but had nonetheless returned to a relationship with her abuser, Buchanan; in fact, she had become pregnant and had given birth to another child, possibly by Buchanan.[2] The petition also stated that respondent-mother had completed psychological and psychiatric evaluations that showed her IQ to be 76. The petition also stated that an infant mental health specialist had provided individual therapy to respondent-mother and had worked with respondent-mother and the children during visitations for 18 months, but respondent-mother did not benefit from the service, lacked parenting skills, and had not developed a bond with AA and AV. Respondent-mother had been receiving "supported visitation" services, in which a counselor would teach lessons in parenting skills, and make sure that respondent-mother understood those lessons and implemented them during visitation; however, she was terminated from this program for failing to participate, and had missed 19 scheduled parenting time visits. The petition noted that, during parenting time visits, respondent-mother failed to demonstrate adequate parenting skills, yelled at the children, could not soothe or

---

[2] This child is currently the subject of child custody proceedings in the trial court, and is not a party to this appeal.

calm them when they became upset, and failed to bring necessary supplies for the children. Respondent-mother had never verified her income.

Respondent-mother failed to appear for a pretrial hearing on May 21, 2018, and petitioner was unaware of her whereabouts. Respondent-mother also failed to appear for the termination hearing on June 18, 2018. Jeremy Smith, respondent-mother's new foster care specialist, testified that he had been assigned to respondent-mother's case on April 18, 2018, but had been unable to locate respondent-mother until two weeks before the termination hearing. Smith testified that, according to petitioner's records, respondent-mother had last participated in parenting time on April 3, 2018, and had not seen AA and AV since then. Smith testified that respondent-mother did complete portions of her treatment plan, but frequently did not benefit from services that she did complete, such as parenting classes. Smith testified that, due to respondent-mother's "borderline intellectual functioning," as revealed by the psychological evaluation, she was offered extra services such as a parent partner, supportive visitation, and infant mental health services; however, Smith testified that these extra services did not improve respondent-mother's behavior or parenting skills. Smith testified that respondent-mother stopped participating in most services after her third child was born in November 2017.

The termination hearing continued on July 30, 2018. Respondent-mother did not appear, and Smith had not been able to locate her; nor had respondent-mother had any contact with AA and AV. Respondent-mother's attorney also testified that he was unable to locate or contact respondent-mother.

The trial court found that statutory grounds for termination had been proven under MCL 712A.19b(3)(c)(*i*) (conditions that lead to adjudication continue to exist) and (g) (failure to provide proper care and custody), noting that respondent-mother had returned to respondent-father despite the risk of domestic violence. The trial court also found that, despite two years or more having passed since AA's and AV's adjudications, respondent-mother had not completed her treatment plan to the extent that it would be proper to return AA and AV to her care, in spite of the extra services offered by petitioner. The trial court also held that termination was in the children's best interests, noting their young ages and their need for permanency and stability, as well as the fact that they were placed with non-relative foster parents who were interested in adoption. The trial court found that no bond existed between the children and respondent-mother. The trial court entered orders terminating respondent-mother's parental rights to both children.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo issues of statutory interpretation as questions of law. *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008), abrogation on other grounds recognized by *In re Long*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 344326), slip op at 5-6. "Whether the [Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.] has any effect on termination of parental rights proceedings . . . presents a question of law that [this Court] review[s] de novo." *In re Terry*, 240 Mich App 14, 23-24; 610 NW2d 563 (2000). However, an issue is unpreserved for appeal if it is not raised before, addressed, or decided by the trial court. *In re TK*, 306 Mich

App 698, 703; 859 NW2d 208 (2014). We review unpreserved issues for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An error affects substantial rights when prejudice is caused, meaning, the error affected the outcome of the proceedings. *Id*. at 8-9.

The trial court must find that a statutory ground for termination is established by clear and convincing evidence. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (citations omitted). We review for clear error a trial court's determination that a statutory ground exists for termination. *Id*. at 409. See also MCR 3.977(K). We also review for clear error the trial court's findings of fact supporting its termination decision, including the finding that reasonable efforts towards reunification were made. *LE*, 278 Mich App at 18. The trial court's findings of fact "may be set aside only if, although there may be evidence to support them, the reviewing court is left with a definite and firm conviction that a mistake has been made." *LE*, 278 Mich App at 18.

## III. ANALYSIS

Respondent-mother argues that the trial court erred by terminating her parental rights, because petitioner failed to reasonably accommodate her under the ADA.[3] We disagree. A respondent must challenge in the trial court the adequacy of services provided by petitioner to preserve the issue for appeal. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Here, respondent-mother argues for the first time on appeal that petitioner failed to provide reasonable accommodations to her based on her intelligence level and learning disability. Because respondent-mother failed to challenge the services provided by petitioner, this issue is not preserved for appeal. *Frey*, 297 Mich App at 247.

Before a court may consider termination of a respondent's parental rights where the permanency plan is adoption, petitioner must make reasonable efforts to reunite the family. MCL 712A.19a(2). "The adequacy of [petitioner's] efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "While [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Frey*, 297 Mich App at 248.

Respondent-mother argues that petitioner "failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2)." Respondent-mother specifically asserts that petitioner failed in its duty to make reasonable efforts towards reunification by failing to provide her with reasonable accommodations under the ADA. However, this Court has held that a respondent's

---

[3] While there is much discussion in this opinion of respondent being a victim of domestic violence, this appeal is on the basis of whether there were reasonable accommodations made for respondent under the ADA. We are fully aware that being a victim of domestic violence is not a reason, in and of itself, to terminate parental rights. In re Plump, 294 Mich App 270, 273; 817 NW2d 119 (2011).

failure to raise the issue of petitioner's possible violation of the ADA when a treatment plan is adopted, or shortly thereafter, waives appellate review of that issue:

> Any claim that the [family independence agency (FIA)] is violating the ADA must be raised in a timely manner, however, so that any reasonable accommodations can be made. Accordingly, if a parent believes that the FIA is unreasonably refusing to accommodate a disability, the parent should claim a violation of her rights under the ADA, either when a service plan is adopted or soon afterward. The court may then address the parent's claim under the ADA. Where a disabled person fails to make a timely claim that the services provided are inadequate to her particular needs, she may not argue that petitioner failed to comply with the ADA at a dispositional hearing regarding whether to terminate her parental rights. In such a case, her sole remedy is to commence a separate action for discrimination under the ADA. At the dispositional hearing, the family court's task is to determine, as a question of fact, whether petitioner made reasonable efforts to reunite the family, without reference to the ADA.

> In the present case, respondent did not raise a challenge to the nature of the services or accommodations offered until her closing argument at the hearing regarding the petition to terminate her parental rights. This was too late in the proceedings to raise the issue. The time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights. [*Terry*, 240 Mich App at 26-27; see also *id*. at n 5 ("Any claim that the parent's rights under the ADA were violated must be raised well before a dispositional hearing regarding whether to terminate her parental rights, and the failure to timely raise the issue constitutes a waiver.").]

Respondent-mother failed to raise this claim when her treatment plan was adopted, or shortly thereafter, or after her psychological, psychiatric, or neurological evaluations were performed, or at any point in the proceedings below. Therefore, this issue is waived on appeal. *Id*. at 27. Nonetheless, even if we did not find that respondent-mother waived this issue, we would find no error requiring reversal in petitioner's efforts at reunification or accommodation under the ADA.

The ADA defines "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 CFR 35.108(a)(1)(*i*). Respondent-mother identifies her mental health disability as a "learning disability," but fails to indicate how it substantially limits any of her major life activities. Moreover, the record does not support her claim that petitioner failed to reasonably accommodate her intelligence level.

In *In re Hicks/Brown*, 500 Mich 79, 83; 893 NW2d 637 (2017), the respondent's parental rights were terminated, and she argued on appeal that the petitioner, Department of Health and Human Services (DHHS), did not make reasonable efforts at reunification because it failed to accommodate her intellectual disabilities. The respondent participated in the service plan provided by DHHS, but her attorney later argued that the services did not meet her needs. *Id*. at 84. Throughout the proceedings, her attorney inquired about the efforts of DHHS to get services

through an outside agency to accommodate respondent's disability, but the respondent never received these services. *Id*. After the respondent's parental rights were terminated, she appealed, arguing that the reunification efforts of DHHS did not accommodate her disability as required by the ADA. *Id*. at 84-85. Our Supreme Court noted that, under the Michigan Probate Code, DHHS has a duty to make reasonable efforts to reunify a family before terminating parental rights. *Id*., citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). DHHS also has obligations under the ADA, which requires that " 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Hicks/Brown*, 500 Mich at 86, quoting 42 USC 12132. The Supreme Court thus concluded that "efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Hicks/Brown*, 500 Mich at 90. The Court ultimately held that the trial court in that case had erred by failing to consider whether DHHS had failed to attempt to secure services tailored to respondent's disability from outside agencies, vacated the termination order, and remanded to the trial court for consideration of whether DHHS had accommodated the respondent's disability in its reunification efforts. *Id*. at 91.

Under *Hicks/Brown*, DHHS is required to reasonably accommodate a parent's disabilities in its reunification efforts before termination. *Id*. at 85. However, the facts of this case are distinguishable from *Hicks/Brown*, and demonstrate that petitioner made reasonable efforts to accommodate respondent-mother's mental health issues in its efforts of reunification before termination. In *Hicks/Brown*, DHHS received information from medical professionals that the respondent would benefit from tailored services through an outside organization, but did not provide those services. *Id*. at 89-90. Here, respondent-mother was provided with multiple opportunities to comply with services tailored to meet her mental health needs.

Respondent-mother's psychological evaluation indicated that respondent-mother's IQ score was 76, in the fifth percentile, and in the borderline range of intellectual functioning. Because respondent-mother exhibited signs of traumatic brain injury, including confusion and memory loss, a neurological evaluation and a psychiatric evaluation were recommended. It was also recommended that respondent-mother continue in individual counseling, domestic violence counseling, and parenting classes. Respondent-mother completed a psychiatric evaluation, and it was recommended that she undergo a neurological evaluation due to her possible brain injury, and to participate in individual therapy, domestic violence classes, and supportive therapy. Respondent-mother completed the neurological evaluation, and, although she had some memory issues, the result was "within normal limits." None of the evaluations diagnosed respondent-mother with a "learning disability."

Petitioner provided several specialized services to respondent-mother based on her evaluation results, but she did not benefit from these services. *Frey*, 297 Mich App at 248. In November 2016, she was provided with a parent partner, but did not initially contact the parent partner to begin the program. Respondent-mother had completed the parent partner program by June 2017, but failed to develop proper parenting skills. Petitioner then recommended supportive visitation, but respondent-mother failed to benefit from this program as well. Infant mental health services were provided during visitation, but, again, respondent-mother did not benefit from them because her parenting skills did not improve. When additional parenting

classes were recommended based on the results of her psychological and psychiatric evaluations, she declined them. Respondent-mother ultimately ceased participation in all services after the birth of her third child.

We conclude, on this record, that the trial court did not err by determining that respondent-mother had failed to "take advantage of the additional services offered" and had "failed to address her mental health needs despite the provision of specialized services." Petitioner made reasonable efforts to accommodate respondent-mother's specific needs by recommending that she complete the appropriate evaluations, and then by referring her for the services recommended from the evaluation results. *Hicks/Brown*, 500 Mich at 85. However, respondent-mother did not fully participate in the services, and did not benefit from them. See *Frey*, 297 Mich App at 248. Therefore, the trial court did not err by determining that petitioner made reasonable efforts toward reunification, including specialized services to meet respondent-mother's needs. *Rood*, 483 Mich at 89; *LE*, 278 Mich App at 18.

We note that, while respondent-mother states in her brief on appeal that "[t]he undersigned submits that clear and convincing evidence warranting termination under [MCL 712A.19b(3)(c)(*i*) and (g)] was not presented," she provides no analysis regarding the statutory grounds for termination, apart from her argument concerning reasonable efforts and her bare quotation of the statutory subsections. Respondent-mother's failure to properly brief this issue on appeal constitutes abandonment of the issue. *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled on other grounds by *In re Trejo*, 462 Mich 341, 353 (2000), superseded in part by statute on other grounds as recognized in *In re Moss*, 301 Mich App 76, 83 (2013). In any event, there was sufficient support in the record for the trial court's determination that statutory grounds for termination had been proven, and we find no clear error. *Schadler*, 315 Mich App at 408; *LE*, 278 Mich App at 18.

Affirmed.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra